IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ALLIANCE SOLUTIONS, INC.,

    *Plaintiff*,

    v.

QUEST SOFTWARE, INC.,

    *Defendant*.

Civil Action No. ELH-11-2115

**MEMORANDUM OPINION**

Alliance Solutions ("Alliance"),[1] plaintiff, is a Maryland business entity that identifies new clients for software vendors. Quest Software, Inc. ("Quest"), defendant, is a Delaware corporation with its principal place of business in California. It develops and markets software for enterprise systems management. Alliance filed suit against Quest (ECF 2), alleging that the two corporations had a contract, by which Alliance undertook to identify new business contacts for Quest, and that Quest breached the contract by unilaterally terminating the contract without paying Alliance the sums it was owed. Alliance attached to its Complaint a copy of the alleged contract, dated October 26, 2006. *See* Ex.A to Complaint ("2006 Contract") (ECF 2-1).[2]

---

[1] In its original Complaint (ECF 2), from which the caption of the case was derived, Alliance identified itself as "Alliance Solutions, Inc." However, in its Amended Complaint (ECF 20), Alliance identified itself as "Alliance Solutions, LLC." Similarly, Alliance is identified as "Alliance Solutions, LLC" in all of the documents attached as exhibits to both complaints. In the first paragraphs of both complaints, Alliance described itself as "a Maryland corporation engaged in the business of identifying business contacts for software vendors with end users who have a need for such services." However, the suffix "LLC" designates a limited liability company, not a corporation. In the Amended Complaint, plaintiff stated that an individual named Harold Youra is "the sole owner and President of Alliance." ECF 20 ¶ 1. No information regarding Youra's citizenship for jurisdictional purposes has been provided.

[2] Alliance initiated the lawsuit in the Circuit Court for Baltimore County, Maryland. Quest timely removed the case to this Court on the basis of diversity of citizenship. *See* 28 U.S.C. §§ 1332(a), 1441; *see also* Notice of Removal (ECF 1). Because the record is vague as to plaintiff's form as a business entity, *see* note 1, *supra*, it is not entirely clear whether the parties

Quest has moved to dismiss (ECF 17), invoking a forum selection clause in the 2006 Contract that specified the state or federal courts in Orange County, California as the exclusive venue for any lawsuit seeking enforcement of the contract.  *See* Fed. R. Civ. P. 12(b)(3) (authorizing motions to dismiss for improper venue); *Sucampo Pharm., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 550 (4th Cir. 2006) ("a motion to dismiss based on a forum-selection clause should be properly treated under Rule 12(b)(3) as a motion to dismiss on the basis of improper venue").  Quest also argued that Alliance's Complaint did not contain sufficient plausible, well-pleaded facts to state a claim upon which relief could be granted.  *See* Fed. R. Civ. P. 12(b)(6).

In response, Alliance filed an Amended Complaint (ECF 20) and a response (ECF 21), in which Alliance contended that it had "inadvertently" appended the wrong contract to its original Complaint, and that it actually sought to enforce an earlier contract between the parties, executed in 2003, which did not contain a forum selection clause.  *See* Ex.A to Amended Complaint ("2003 Contract") (ECF 20-1).   Quest then filed another motion, seeking to strike or, alternatively, dismiss Alliance's Amended Complaint (ECF 23), on the basis that it was filed improperly, without leave of court, and is either futile or subject to dismissal under Rule 12(b)(6) for failure to state a claim.

Quest's motions have been fully briefed,[3] and no hearing is necessary to resolve them.

---

are "citizens of different States" for purposes of diversity jurisdiction.  28 U.S.C. § 1332(a)(1). Ordinarily, a corporation is "deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business," 28 U.S.C. § 1332(c)(1), but "the citizenship of a limited liability company . . . is determined by the citizenship of all of its members."  *Cent. W. Va. Energy Co. v. Mountain State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011).  In the Order accompanying this Memorandum Opinion, the parties are directed to clarify the basis for the Court's subject matter jurisdiction.

[3] I have considered Quest's original motion to dismiss (ECF 17) and supporting memorandum (ECF 17-1) (collectively, "First Motion"); Alliance's response ("First Response") (ECF 21-1); and Quest's reply ("First Reply") (ECF 22).  I have also considered Quest's motion to strike or, in the alternative, to dismiss Alliance's Amended Complaint (ECF 23) and

*See* Local Rule 105.6.  For the reasons that follow, Quest's motions will be denied.

## Background[4]

In considering a motion to dismiss under Rule 12(b)(6), a court accepts the truth of the well pleaded facts in the plaintiff's complaint, including facts derived from "documents attached or incorporated into the complaint," and construes them in the light most favorable to the plaintiff.  *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440, 448 (4th Cir. 2011).  In contrast, a motion to dismiss under Rule 12(b)(3) "allows the court to freely consider evidence outside the pleadings, unlike under a 12(b)(6) motion."  *Sucampo*, *supra*, 471 F.3d at 550.

In its original Complaint, Alliance contended that the parties entered into the 2006 Contract for the purpose of "'identify[ing] to Quest new business opportunities for the benefit of Quest.'"  Complaint ¶ 3 (quoting 2006 Contract at 1) (brackets added to show alteration in Complaint).  According to Alliance, it identified "a number of such business opportunities which were presented to Quest," including an opportunity that resulted in a contract between Quest and the United States Department of Veterans Affairs ("VA") worth $3.7 million.  Complaint ¶ 4. Alliance also alleged, on information and belief, that Quest had entered into other contracts based on opportunities identified by Alliance, which Quest had failed to disclose.  *Id.*

Moreover, Alliance alleged that the 2006 Contract provided for "an automatic renewal period of 6 months unless terminated prior to renewal in writing," and that Quest had "unilaterally terminated the contract without paying the Plaintiff the sums owed for the duration

---

supporting memorandum (ECF 23-1) (collectively, "Second Motion"); Alliance's response ("Second Response") (ECF 24-1); and Quest's reply ("Second Reply") (ECF 25).

[4]  The facts set forth in this section are drawn from plaintiff's Complaint and Amended Complaint, and the attached exhibits, taken in the light most favorable to plaintiff.  To the extent that evidence outside the pleadings is relevant, I will address it in the Discussion.

of the contract." *Id.* ¶ 5. Alliance sought $74,000 in damages for monies owed with respect to the VA contract, $30,000 in "monthly fees," and "other damages as may be determined." *Id.* ¶ 6.

As noted, a copy of the alleged 2006 Contract was attached as an exhibit to the initial Complaint. The 2006 Contract, titled "Quest Software Inc. Lead Referral Agreement," is printed on Quest's letterhead. At the top of the document, the "Agreement Date" is listed as October 26, 2006, and the contract is designated as "Agreement No. US-RPN-06-0027." The copy contains Harold Youra's signature, dated October 28, 2006, as President of Alliance, and contains a blank line for the signature of Rochelle Landry, Quest's Director of Worldwide Contracts. As Exhibit A to its First Reply (ECF 22-1), Quest submitted a fully executed copy of the 2006 Contract, containing Landry's signature of October 30, 2006.

The 2006 Contract concerns business "leads," and provides that Alliance "shall identify each lead . . . by submitting to Quest a Lead Referral Worksheet, in substantially the form attached hereto as Exhibit 1."[5] 2006 Contract at 1. The contract requires Quest to "either accept or reject" each lead "in writing" within "a reasonable time after receipt." *Id.* It states: "If Quest directly licenses [a] Product to a customer within ninety (90) days of accepting the corresponding Lead, Quest shall pay [Alliance] 2% of the net license fees paid by the customer for such Product." *Id.*

Paragraph 6 of the 2006 Contract provides, *id.* at 2:

**Term and Termination.** This initial term of this Agreement shall be for one (1) year from the Agreement Date, and may be renewed for subsequent periods upon mutual agreement by the parties. Either party may terminate the Agreement for convenience upon sixty (60) days written notice. Either party may terminate the Agreement for breach upon five (5) days notice.

---

[5] The Lead Referral Worksheet is not attached to the copy of the 2006 Contract submitted with plaintiff's Complaint, although a completed Lead Referral Worksheet is attached to the copy of the contract submitted with Quest's First Reply. The Lead Referral Worksheet is a one-page form by which Alliance was to provide a variety of information about a given "prospect."

The foregoing provision plainly does not call for "an automatic renewal period of 6 months unless terminated prior to renewal in writing," as plaintiff asserted in its Complaint.

Paragraph 8 of the 2006 Contract states, *id.* at 2 (italic emphasis added):

> **General.** *This Agreement and Exhibit 1 attached hereto constitutes the entire agreement of the parties on the subject matter herein and supercedes* [sic] *all previous communications, representations, understandings or agreements with respect to such subject matter.* This Agreement shall be governed by and construed in accordance with the laws of the State of California, excluding its conflict of laws principles. *Any action seeking enforcement of this Agreement or any provision hereof shall be brought exclusively in the state or federal courts located in the County of Orange, State of California*, United States of America. Each party hereby agrees to submit to the jurisdiction of such courts.

Alliance's Complaint was originally filed in state court and was timely removed by Quest on August 1, 2011.  In the Notice of Removal (ECF 1), Quest averred that it was served with the Complaint and summons on or about July 15, 2011.  *Id.* ¶ 3.  Accordingly, pursuant to Rule 81(c)(2) of the Federal Rules of Civil Procedure, Quest's response to the Complaint would have been due on or before August 8, 2011.  However, on August 3, 2011, the parties filed a "Joint Request For Extension Of Defendant's Response Date" (ECF 9), seeking an extension until September 15, 2011.  The Court paperlessly granted the motion (ECF 11).

On September 15, 2011, Quest filed its First Motion.  It sought dismissal for improper venue under Rule 12(b)(3), and for failure to state a claim upon which relief could be granted under Rule 12(b)(6).  As to venue, Quest relied upon the forum selection clause in Paragraph 8 of the 2006 Contract, providing that an action seeking "enforcement" of the 2006 Contract "shall be brought exclusively" in the state or federal courts in Orange County, California.  *See* First Motion at 3-6.  With respect to its argument under Rule 12(b)(6), Quest contended that Alliance had failed to allege that it had submitted lead referral sheets to Quest, or that Quest had sold software licenses based on the leads within ninety days thereafter, so as to trigger liability for

commissions under the 2006 Contract.  *See id.* at 7.  Moreover, Quest observed that, in contrast to Alliance's allegations in its Complaint, the 2006 Contract does not contemplate "automatic renewal" every six months, but rather provides for an initial one-year term, followed by the possibility for renewal by "mutual agreement."   Because Alliance had not alleged that subsequent renewals had occurred or, indeed, alleged the dates of Quest's purported breaches, Quest argued that the Complaint failed to state a claim for relief.  *See id.* at 7-9.  Finally, Quest challenged Alliance's claim for $30,000 in "monthly fees," pointing out that no provision of the 2006 Contract references a monthly fee obligation.  *See id.* at 9.

On September 27, 2011, plaintiff filed a "Motion for Extension of [T]ime to Respond to Defendant's Motion to Dismiss" (ECF 18).  In that motion, Alliance proposed that it would file an "Opposition" to the First Motion on or before October 14, 2011, and that Quest's reply would be due by October 28, 2011.  Plaintiff also represented: "Defendant had consented to the above revised schedule."  Along with its motion for extension of time, Alliance submitted a proposed order, which would have directed "that the Plaintiff shall have until Friday, October 14, 2011 to respond" to the First Motion.  ECF 18-1.  However, the same day the motion was filed, the Court granted it by a paperless order (ECF 19),[6] which said, in part: "Response due by 10/14/2011."

On October 13, 2011, Alliance filed its First Response and its Amended Complaint.  In the First Response, Alliance argued that the "Complaint should not be dismissed as the entire argument is based upon a fallacious premise which was inadvertently set up by the Plaintiff."  First Response at 1.  Specifically, Alliance acknowledged that it had "muddied the waters by attaching the wrong contract" to its Complaint.  *Id.*  According to Alliance, the parties' relationship regarding "government business development" was governed by a different contract,

---

[6] In this district, a "paperless order" is an order made via docket entry in the CM/ECF electronic filing system, without an associated document embodying a separate order.  In such a circumstance, the text of the docket entry is the text of the court's order.

the 2003 Contract, which does not contain a forum selection clause. *Id.* Alliance claimed that the 2006 Contract "was for a specific opportunity for which the Plaintiff was paid." *Id.*[7]

Alliance appended a copy of the 2003 Contract as an exhibit to the Amended Complaint. The 2003 Contract is in the form of a "Consulting Agreement," by which Alliance "will perform federal business development services" for Quest. 2003 Contract at 1. With regard to "Proposal Acceptance," it states: "If Quest Software is in agreement with this proposal, please sign your acceptance below. Upon Alliance's counter signature, the proposal becomes a contract . . . ." *Id.* at 2. The 2003 Contract was signed on August 28, 2003, by Mr. Youra as President of Alliance and by Paul D. Garver as Vice President of Quest. *See id.* at 3.[8]

"Attachment A" to the 2003 Contract provides that Alliance "shall provide consulting in the area of business development and marketing for Quest," by "[b]uilding relationships with government end users and integrators," "[a]rranging meetings" with prospective business partners and "government end users," and attending "industry association meetings." 2003 Contract at 4. In addition, the 2003 Contract calls for Alliance to obtain "Marketing Intelligence" for Quest, and to submit monthly "activity reports" to Quest. *Id.*

---

[7] Alliance also argued, in the alternative, that even if the forum selection clause in the 2006 Contract applied, it should not be enforced because Alliance would otherwise "'for all practical purposes be deprived of [its] day in court' because of the grave inconvenience or unfairness of the selected forum." *Allen v. Lloyd's of London*, 94 F.3d 923, 928 (4th Cir. 1996) (quoting *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 18 (1972), and citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991)) (setting forth standards for enforcement of forum selection clauses on grounds of unreasonableness). As I shall explain, I need not address this argument at this juncture.

[8] The 2003 Contract's two attachments refer to the "Consulting Agreement, dated July 28, 2003." 2003 Contract at 4-5. Some subsequent correspondence between the parties refers to the 2003 Contract as "the agreement between Quest Software and Alliance Solutions dated August 28, 2003," ECF 20-2 at 1; other correspondence refers to "the Consulting Agreement dated July 28, 2003," ECF 20-3 at 1; and still other correspondence refers to the "Consulting Agreement dated July 23, 2003," ECF 20-4 at 1. It appears that all of these documents refer to the 2003 Contract. At least, no party suggests otherwise and, taking the facts in the light most favorable to plaintiff, I will so assume for present purposes.

With regard to "Fees," Attachment B to the 2003 Contract provides, in relevant part, *id.* at 5:

> Alliance shall receive a retainer fee of $6,000.00 per month due on the first of the month to cover the period of the previous month.  A commission of two percent (2%) will be paid on net sales of Quest Software licenses to integrators or end users that Quest Software receives within six (6) months after Alliance and Quest mutually identify and agree upon said integrators or end users in its [sic] monthly pipeline report, provided that (i) such pipeline activity report . . . was approved by the Vice President, Public Sector [*i.e.*, Garver]; (ii) Alliance introduced Quest Software into [sic] the integrator or end user account; and (iii) Alliance played a significant role in selling the client on [sic] Quest Software.

According to the 2003 Contract, "net sales" to Quest are calculated after deduction from revenue of payments to "all partners" and "the initial 12 months of maintenance." *Id.*  Moreover, payment of a commission "will occur when Quest Software receives payment from the end user customer or integrator." *Id.*  The 2003 Contract specifies that payments to Alliance will be "considered late" thirty days after Quest's receipt of an "undisputed invoice" from Alliance, and that "[l]ate payments shall accrue interest at the lesser of one and one-half percent (1.5%) or the highest amount permitted by law, per month until paid." *Id.* at 1.

As to the "Term" of the agreement, Attachment B to the 2003 Contract provides: "Effective September 1, 2003, the initial term of this agreement is for six (6) months.  This Agreement will be renewed semi-annually unless either party terminates with 30 days' written notice prior to the then-current renewal date." *Id.* at 5.

In addition to the 2003 Contract, Alliance included three other exhibits with the Amended Complaint.  First, plaintiff submitted a letter, dated December 20, 2005, renewing the 2003 Contract.  *See* Ex.B to Amended Complaint ("2005 Renewal") (ECF 20-2).  The 2005 Renewal is a letter from Garver to Youra, countersigned by Youra, which states, *id.*:

> Referencing the agreement between Quest Software and Alliance Solutions dated August 28, 2003.  This confirms our mutual agreement to extend the term of the

Agreement beginning November 1, 2005 for six months at a retainer rate of $7000.00 with the same terms and conditions as specified in the original agreement. The agreement will be renewed semi-annually unless other party terminates with 30 days' written notice prior to the then-current renewal date. Except as amended hereby with respect to the term, the Agreement remains in full force and effect.

Second, plaintiff submitted an undated letter from Garver to Youra, with a fax header indicating that it was transmitted March 14, 2011, at 12:19 p.m. *See* Ex.C to Amended Complaint ("Garver Letter") (ECF 20-3).[9] It was signed by Garver (as "President and CEO" of "Quest Software Public Sector, Inc."). Although the Garver Letter contains blank lines for Youra's signature confirming "Alliance Solution's [sic] acknowledgement and agreement with the terms of this letter," it is not signed by Youra. The Garver Letter states:

> Reference is hereby made to (i) the Consulting Agreement dated July 28, 2003 between Alliance Solutions, LLC ("Alliance Solutions") and Quest Software, Inc. ("Quest") (the "Agreement"), (ii) the Opportunity Registration Form submitted by Harold Youra on behalf of Alliance Solutions dated February 11, 2011 identifying the U.S. Veteran Affairs (the "Opportunity Registration Form"), and (iii) U.S. Veteran Affairs Order No. DLT-3478855 dated September 30, 2010 (the "Opportunity").
>
> In appreciation of Mr. Harold Youra's assistance with facilitating the November 10, 2009 meeting between Quest and the U.S. Veteran Affairs agency, Quest hereby agree [sic] to make a onetime [sic] payment of $27,119.37 (1%) to Alliance Solutions. By signing below, Alliance Solutions hereby agrees that this payment is the full and final amount payable from Quest to Alliance Solutions regarding the Opportunity and the Opportunity Registration Form and that there are no additional or outstanding amounts due from Quest under the Agreement for the Opportunity, the Opportunity Registration Form, or for any other consulting services performed by Alliance Solutions under the Agreement.

Finally, plaintiff submitted a letter from Garver to Youra, dated February 9, 2011, regarding "Non-Renewal of the Consulting Agreement dated July 23, 2003 ('the Agreement') between Alliance Solutions, LLC ('Alliance') and Quest Software, Inc. ('Quest')." Ex.D to

---

[9] There is no indication that the date of fax transmission was necessarily the original date that it was transmitted from Garver to Youra. Based on the letter's content, it appears that it was drafted on or after February 11, 2011.

Amended Complaint ("2011 Non-Renewal") (ECF 20-4).  It was signed by Garver (the date of Garver's signature is not legible), and countersigned by Youra, as Alliance's President, on February 11, 2011.  The 2011 Non-Renewal states that, pursuant to the applicable provisions of the 2003 Contract, quoted above, "Quest is hereby giving Alliance thirty days (30) days [sic] prior written notice that Quest will not renew the Agreement and that the Agreement shall terminate at the end of the current term."

In the Amended Complaint, plaintiff alleged that, pursuant to the 2003 Contract, it "identified a number of . . . business opportunities" for Quest, including the opportunity, previously alleged in the original Complaint, that resulted in a $3.7 million contract with the VA. Amended Complaint ¶ 4.  According to the Amended Complaint, on or about November 10, 2009, at Quest's request, Youra facilitated a meeting with VA personnel, which resulted in the contract between the VA and "Quest Public Sector Group, Inc., a related entity to Quest Software, Inc.," which Alliance alleged is "a [c]orporation formed in the State of Maryland with its principal place of business in Rockville, MD."[10]  *Id.*  Plaintiff averred that "Quest has acknowledged this" via the Garver Letter.  *Id.*  Once again, Alliance alleged that it is entitled to a commission of 2% of the gross price of the contract, or approximately $74,000.  *Id.* ¶ 5.

Citing the 2011 Non-Renewal, plaintiff also argued that it was owed monthly payments for the "balance of the term" from the date of the 2011 Non-Renewal (February 9, 2011) until July 27, 2011, which Alliance claimed was the end of the then-current term of the 2003 Contract.[11]  *Id.* ¶¶ 6, 7.  According to Alliance, Quest made no monthly payments "after March,

---

[10] Quest Software Public Sector, Inc. is not a party, nor has either side suggested that it should be a party.  Notably, if plaintiff's allegations as to the citizenship of Quest Software Public Sector are correct, and if plaintiff is, in fact, a citizen of Maryland, *see* notes 1-2, *supra*, complete diversity would be destroyed if Quest Software Public Sector became a party.

[11] This assertion is difficult to square with the 2005 Renewal, which began a new six-

2011." *Id.*  In Alliance's view, it was "entitled to its monthly payment of $5000 for the balance of the term which would be $20,000."[12]

Plaintiff also alleged that it was entitled to commissions derived from contracts between Quest and the Centers for Disease Control ("CDC") and the National Aeronautics and Space Administration ("NASA").  *Id.* ¶ 8.  However, because plaintiff was unaware of the amounts of those contracts, it was unable to state the "exact amount which is owed."  *Id.*

Thereafter, as noted, Quest filed its Second Motion, whereby it moved to strike or, in the alternative, to dismiss the Amended Complaint.  The grounds of the Second Motion, as well as additional facts, will be presented in the Discussion.

### Discussion

Quest argues that the Court should strike the Amended Complaint because it was filed without Quest's consent or leave of court, in violation of Rule 15(a)(2) of the Federal Rules of Civil Procedure.  Moreover, Quest contends that, to the extent the Court is inclined to treat the Amended Complaint as a motion for leave to file an amended complaint, leave to amend should be denied because amendment, in Quest's view, would be futile.  Alternatively, Quest argues that

---

month term for the 2003 Contract as of November 1, 2005.  Under the 2005 Renewal, one would expect the 2003 Contract to renew on November 1 and May 1 of each year.  A term ending on July 27 would make sense only based on one of the dates (July 28, 2003) by which the parties identified the contract in their correspondence.  *See* note 8, *supra*.  However, July 28 plainly was not the six-month renewal date of the 2003 Contract under any construction.  Rather, the 2003 Contract's provision as to "Term," in Attachment B, expressly states: "*Effective September 1, 2003*, the initial term of this agreement is for six (6) months."  2003 Contract at 5 (emphasis added).  Thus, until amended by the 2005 Renewal, the 2003 Contract apparently renewed as of September 1 and March 1 of each year.

[12] The monthly amount of $5,000 does not comport with the terms of the 2003 Contract.  As noted, the original 2003 Contract called for a monthly "retainer fee" of $6,000.  *See* 2003 Contract at 5.  The 2005 Renewal increased the monthly retainer fee to $7,000.  *See* 2005 Renewal at 1.  It is difficult to fathom why plaintiff departed from the provisions of the 2003 Contract as to the amount of the monthly retainer, because they are actually more favorable to plaintiff than the terms alleged in the Amended Complaint.

the Amended Complaint should be dismissed for failure to state a claim.  In either event, Quest seeks an award of attorneys' fees in connection with its briefing regarding what it views as a "disingenuous argument" by Alliance that its initial reliance on the 2006 Contract was inadvertent and that the 2003 Contract governed the parties' relationship.  *See* First Reply at 9.

Rule 15(a)(1) permits a party to "amend its pleading once as a matter of course" within "21 days after serving it" or, "if the pleading is one to which a responsive pleading is required, 21 days after a service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."  "In all other cases," Rule 15(a)(2) applies, and provides: "[A] party may amend its pleading only with the opposing party's written consent or the court's leave."  However, Rule 15(a)(2) also states: "The court should freely give leave when justice so requires."

In this case, Quest's First Motion, under Rule 12(b), was filed on September 15, 2011, and served on Alliance's counsel via the CM/ECF electronic filing system.  *See* First Motion at 11 (certificate of service).  Therefore, because the 21-day window for amendment of pleadings as of right begins to run upon "*service* of a motion under Rule 12(b)," Fed. R. Civ. P. 15(a)(1) (emphasis added), an additional three days were added to the 21-day period pursuant to Rule 6(d) of the Federal Rules of Civil Procedure.[13]  Accordingly, pursuant to F. R. Civ. P. 15(a)(1) and 6(d), Alliance was entitled to file an amended complaint as of right within 24 days, *i.e.*, by October 9, 2011.  However, October 9, 2011 was a Sunday, and the following day, Monday, October 10, 2011, was a legal holiday in celebration of Columbus Day.  Thus, Alliance's deadline was extended until October 11, 2011, the next day that the Court was open.  *See* Fed. R. Civ. P. 6(a)(1)(C).  The Amended Complaint was filed on October 13, 2011, two days after the

_____

[13] Rule 6(d) adds an additional three days to any period calculated based upon "a specified time after service," if service is made by certain methods, including mailing and electronic transmission.

window under Rule 15(a)(1) closed.  Quest concedes that Alliance "did seek an extension [of] its time to file its Response to the Motion to Dismiss, to which Defendant consented and [which] the Court granted."  Second Motion at 3 n.1.  However, Quest points out that "[n]either the extension request nor the order mentioned any extension of the time period in which Plaintiff might file an Amended Complaint."  *Id.*

In response, Alliance notes that the parties previously had consented to an extension of Quest's time to respond to the Complaint, and that the extension of time for Alliance to respond to Quest's First Motion was "in large part due to both [plaintiff's] counsel[] and the Plaintiff's principal having significant time out of their respective office to celebrate the Jewish Holidays." Second Response at 1.  According to Alliance, its counsel believed "that the extension of time would include any rights that the Plaintiff would have enjoyed during the period allowed by the Federal Rules of Procedure following the filing" of the First Motion.  *Id.*  In any event, Alliance argues that Quest is not prejudiced by amendment of the pleadings at this early stage of the litigation, and maintains that, if Rule 15(a)(2) applies, plaintiff should be granted leave to amend its complaint.

Notably, although Rule 15(a)(1) requires an amended complaint filed without leave of court or the opposing party's consent to be submitted within 21 days after a motion under Rule 12(b), the Federal Rules of Civil Procedure do not establish a particular time by which a non-moving party must respond to a Rule 12(b) motion.  In this district, that time is established by Local Rule 105.2(a), which applies generally to all motions and provides: "Unless otherwise ordered by the Court, all memoranda in opposition to a motion shall be filed within fourteen (14)

days of the service of the motion and any reply memoranda within fourteen (14) days after service of the opposition memoranda."[14]

The parties have not cited any case directly addressing the interplay between Fed. R. Civ. P. 15(a)(1) and Local Rule 105.2(a) (or any analogous local rule in another district). To be sure, the time periods specified by the two rules are distinct. And, as noted, Alliance's motion for extension of time to respond to Quest's First Motion did not expressly seek an extension of time to file an amended complaint. Indeed, the motion for extension of time expressly contemplated that Alliance would file an "Opposition" in response to the First Motion. On the other hand, in its caption, the motion for extension of time sought additional time "to Respond" to the First Motion. Similarly, plaintiff's proposed order, filed with the motion for extension of time, would have granted an extension of time "to respond," and the Court's paperless order granting the motion for extension of time stated: "Response due by 10/14/2011."

Moreover, as the plain text of Rule 15(a)(1) provides, an amended complaint is a permissible response to a Rule 12(b) motion. Indeed, a party might opt to file an amended complaint in response to a Rule 12(b) motion, so as to cure the perceived deficiencies identified by such a motion, thereby bringing into sharp focus the basis of a plaintiff's complaint and facilitating efficient resolution of claims.

In my view, a compelling argument can be made that consent to an extension of time to respond to a Rule 12(b) motion, and an order to the same effect, implicitly contemplate an extension of the time to file an amended pleading under Rule 15(a)(1).[15] At least one other judge

---

[14] Because most motions filed in this district are served by mail or via the CM/ECF electronic filing system, most motions are subject to an additional three days' time to respond pursuant to Rule 6(d). Therefore, the *de facto* time by which a non-moving party ordinarily must respond to a Rule 12(b) motion in this district is seventeen days after service of the motion.

[15] Provided, of course, that the non-moving party has not already exercised its one-time

in this district recently has so concluded.  *See Hurd v. NDL, Inc.*, Civ. No. CCB-11-1944, slip op. at 2, 2012 WL _____ (D. Md. Feb. 27, 2012) ("Ms. Hurd filed her amended complaint 31 days after the defendants filed their motion to dismiss under Rule 12(b)(6).  However, because Ms. Hurd requested and was granted an extension of time to file her response, the court will consider the amended complaint timely and therefore permitted as a matter of course.").[16]

I need not definitively resolve this issue, however, because, even assuming that Alliance's Amended Complaint was untimely under Rule 15(a)(1), I am satisfied that leave to amend should be granted under the liberal standard of Rule 15(a)(2).  Fed. R. Civ. P. 15(a)(2) admonishes that leave to amend should freely be given, but commits the matter to the discretion of the district court.  *See Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 769 (4th Cir. 2011).  "A district court may deny a motion to amend when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile."  *Equal Rights Center v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir.

---

option to amend as a matter of course under Rule 15(a)(1).

[16] The other decisions addressing this issue are all unreported.  *See Schwartz v. Chase Home Finance, LLC*, Civ. No. 10-2129-PHX-FJM, 2010 WL 5151326, at *2 (D. Ariz. Dec. 13, 2010) (construing extension of time to respond to motion to dismiss as extension of time to amend under Rule 15(a)(1)); *Garcia v. Rosario*, No.3:10-cv-795, 2010 WL 3724281, at *1 (D. Conn. Sep. 15, 2010) (same); *see also Myers v. Peoples Bank of Ewing*, Civ. No. 3:11-CV-380, 2011 WL 6888523, at *1 (E.D. Tenn. 2011) (declining to resolve whether extension of time to respond to Rule 12(b) motion also extended time to amend under Rule 15(a)(1), where leave to amend would be granted under Rule 15(a)(2)); *Fant v. Floyd*, 2010 WL 5026949, at *1-2 (D.S.C. Dec. 2, 2010) (permitting amendment where plaintiff's counsel had sought leave to "respond or otherwise plead" to motion to dismiss).  *But see Ellis v. Jean*, Civ. No. 10-8837, 2011 WL 6368555, at *6-7 (S.D.N.Y. Dec. 16, 2011) (rejecting argument that extensions of time to respond to motion to dismiss extended time to file amended complaint as of right, as a "departure from the plain language of Rule 15(a)(1)"); *Caro v. Weintraub*, Civ. No. 3:09-cv-1353, 2010 WL 4514273, at *8 (D. Conn. Nov. 2, 2010) (where order extending time "by its own terms only addressed the response to the motion to dismiss," time to file amended complaint under Rule 15(a)(1) was not extended); *Ramos v. Aurora Loan Servs.*, No. 09-61938-CIV, 2010 WL 966856, at *1 (S.D. Fla. Mar. 15, 2010) (same).  None of these cases are cited by either party.

2010); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962); *Laber v. Harvey*, 438 F.3d 404, 426-29 (4th Cir. 2006) (en banc).

Here, there is no cognizable prejudice to Quest in permitting amendment of Alliance's complaint before discovery has commenced and a mere two days after Alliance's time to amend as of right arguably expired.  And, although Quest argues that Alliance's original reliance on the 2006 Contract was not "inadvertent," and characterizes Alliance's contention to the contrary as "disingenuous," First Reply at 8-9, Quest does not contend, nor do I find, that the Amended Complaint was filed in bad faith.   Moreover, I reject Quest's argument that Alliance's Amended Complaint is futile and fails to state a claim upon which relief can be granted.

Quest's argument is based principally upon its position that the merger clause in the 2006 Contract, stating that the 2006 Contract "constitutes the entire agreement of the parties on the subject matter herein and supercedes [sic] all previous communications, representations, understandings or agreements with respect to such subject matter," effectively terminated the 2003 Contract on which the Amended Complaint is based or, alternatively, bars introduction of the 2003 Contract in evidence based on the parol evidence rule.  This argument depends upon consideration of matters outside of the Amended Complaint.   In particular, it requires consideration of the 2006 Contract itself, which was not appended to the Amended Complaint, although it was, of course, appended to Alliance's original Complaint.  In addition, Quest urges me to consider the "Lead Referral Worksheet" that was attached as Exhibit 1 to the 2006 Contract, *see* Ex.A to First Reply at 4 (ECF 22-1), as well as several "Opportunity Registration Forms," submitted as exhibits to Quest's First Reply, *see* Ex.B-D to First Reply (ECF 22-2, 22-3,

22-4),[17] which Quest contends refute Alliance's contention that the 2006 Contract related only to one "specific opportunity."  First Response at 1.

To my knowledge, the Fourth Circuit has not expressly stated a position as to what evidence may be considered when determining whether a proposed amended complaint would be futile for purposes of Rule 15(a)(2).  However, the Fourth Circuit has said that "[f]utility is apparent if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards," thereby seeming to equate the futility inquiry with the standard for dismissal under Rule 12(b)(6).  *Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011) (citing *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) ("Because [the] proposed amended complaint does not properly state a claim under Fed. R. Civ. P. 12(b)(6) . . . , we find the district court correctly determined that further amendment would be futile.")); *see also Dickson v. Microsoft Corp.*, 309 F.3d 193, 200 (4th Cir. 2002); *Szaller v. American Nat'l Red Cross*, 293 F.3d 148, 153 n.2 (4th Cir. 2002).

Arguably, it follows logically that matter outside of the proposed amended pleading should not be considered in determining whether an amendment is futile for purposes of Rule 15(a)(2), because a court ordinarily "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss" for failure to state a claim under Rule 12(b)(6).  *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).  At least one federal appellate court has expressly adopted this view.  *See Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420-21 (6th Cir. 2000) (stating that the "test for futility . . . does not depend on whether the proposed amendment could potentially be dismissed on a motion for summary judgment; instead, a proposed amendment is futile only if it could not withstand a Rule 12(b)(6)

---

[17] The Opportunity Registration Forms are not in the same format as the Lead Referral Worksheet, although both documents are single-page forms for presentation of information regarding business prospects.

motion to dismiss," and reversing, for abuse of discretion, the district court's denial of leave to amend on the ground of purported futility based on consideration of matter outside the pleadings).

As I see it, I do not need to determine whether matter outside of the pleadings may be considered here. This is because, even if the 2006 Contract and the Lead Referral Worksheet and Opportunity Registration Forms submitted by Quest are considered, I cannot conclude that Alliance's Amended Complaint is futile as a matter of law.[18]

To be sure, the 2006 Contract contains a merger clause, by which the 2006 Contract purports to supersede all prior agreements regarding the same "subject matter." 2006 Contract at 2. In Quest's view, "even if the parties had not *explicitly agreed* that the 2003 Contract would be superseded by the 2006 Contract, the 2003 Contract would still have been superseded," because it dealt with the same subject matter. First Reply at 3 (emphasis in original). Therefore, the argument goes, "[g]iven that the parties *did in fact* agree to language that clearly shows an intention to replace the 2003 Contract with the 2006 Contract, there can be no doubt that the 2006 Contract governed the parties' relationship after it was executed." *Id.* (emphasis in original). Moreover, Quest argues that the 2006 Contract unambiguously supersedes the 2003 Contract, and thus the Court cannot consider any extrinsic evidence to the contrary, by virtue of the parol evidence rule. *See id.* at 3-4.[19]

---

[18] Therefore, I also need not resolve whether, despite being outside of the Amended Complaint, the 2006 Contract and the other documents submitted by Quest nevertheless are proper subjects of Rule 12(b)(6) inquiry because some or all of them were attached to the original Complaint or arguably come within the exception to the bar on consideration of matter outside the pleadings for evidence "integral to and explicitly relied on in the complaint." *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

[19] Quest argues that, pursuant to the 2006 Contract's choice of law provision, California's law of contract interpretation applies. Nevertheless, Quest also maintains that the law of

- 18 -

Quest also points out that the Opportunity Registration Forms, which are dated in December 2009 and January 2010, all refer to "Quest Partner Agreement# US-RPN-06-0027," *see* Ex.B-D to First Reply (ECF  22-2, 22-3, 22-4), which is the designation that appears at the top of the 2006 Contract.  *See* 2006 Contract at 1.  Quest maintains that these apparent references to the 2006 Contract dispel the argument that the 2006 Contract related only to a single, isolated business opportunity.

The foregoing arguments might well be persuasive were it not for the Garver Letter and the 2011 Non-Renewal.  These documents, both of which were apparently drafted by Garver, and both of which postdate the 2006 Contract and the Opportunity Registration Forms, refer expressly to the 2003 Contract and clearly are predicated on the proposition that the 2003 Contract remained in full force and effect.  The documents raise a factual question as to whether the parties intended the 2006 Contract to supersede the 2003 Contract.  Attempting to minimize the significance of the Garver Letter and the 2011 Non-Renewal, Quest posits: "Once a contract is superseded, it ceases to exist with regard to future conduct.  The idea that a mistaken reference in a settlement communication or termination letter, can somehow magically resurrect a dead contract is wholly without merit."  Second Reply at 4 (internal citation omitted).

In support of this argument, Quest relies on Corpus Juris Secundum.  But, one of the very sections upon which Quest relies states: "[M]aking subsequent contracts that deal with the same subject matter as the earlier contracts does not abrogate the previous instruments unless the subsequent contract either explicitly rescinds the earlier instruments or deals with the subject matter of those instruments so comprehensively as to be complete within itself."  17B C.J.S. *Contracts* § 597.  It also states that "a discharge will not result from a new contract, where the

California and Maryland is the same with respect to the parol evidence rule.  *See* First Reply at 3-4 & n.2.

contrary intention of the parties is apparent." *Id.*  Moreover, although the "presence of a merger clause is further strong evidence that the parties intended [a] writing to be the complete and exclusive agreement between them," this rule is not absolute, and "an exception to the general rule applies when giving effect to the merger clause would frustrate the parties' true intentions." *Id.  See also Bakery & Confectionery Union & Indus. Int'l Pension Fund v. Ralph's Grocery Co.*, 118 F.3d 1018, 1024-25 (4th Cir. 1997) ("[A]lthough the inclusion of an integration clause 'suggests that the agreement is fully integrated, it does not by itself dictate that conclusion.' And, it is also generally true that 'a writing cannot of itself prove its own completeness, and wide latitude must be allowed for inquiry into circumstances bearing on the intention of the parties.'") (citations omitted).

It is also noteworthy that the 2006 Contract required the mutual agreement of the parties to extend its term, while the 2003 contract extended automatically unless notice of termination was given.  The record contains no documents evincing the parties' agreement to extend the term of the 2006 Contract beyond its initial one-year term—indeed, when the shoe was on the other foot, and it was Alliance that purported to rely on the 2006 Contract in the original Complaint, Quest itself, in its First Motion, pointed out Alliance's failure to submit any evidence that the 2006 Contract had been renewed.

By its plain terms, considered with its attached exhibits, Alliance's Amended Complaint states a plausible claim for relief, and accordingly is not futile.[20]  Therefore, I will deny Quest's Second Motion, to the extent that it seeks to strike or dismiss the Amended Complaint, and will grant Alliance leave to file the Amended Complaint, *nunc pro tunc*.  It follows that Quest's First

---

[20] It may be that Quest ultimately will prevail in its contention that the 2006 Contract superseded the 2003 Contract.  However, in my view, that determination cannot be made without affording the parties an opportunity for discovery.  I express no view, at this juncture, as to the extent that parol evidence may be admissible in resolving this issue.

Motion will be denied, as moot.  Because Alliance no longer seeks to enforce the 2006 Contract, that agreement's forum selection clause is not controlling.  As a result, I need not resolve Alliance's argument that the forum selection clause should not be enforced.

Finally, I address Quest's request for attorneys' fees.  Certainly, Quest was justified in seeking dismissal of the original Complaint on the basis of the forum selection clause (which is stated in unequivocal language in the 2006 Contract, but is mentioned nowhere in the original Complaint) and on the basis of several inconsistencies between the actual provisions of the 2006 Contract and its provisions as alleged in the original Complaint.  However, I take plaintiff's counsel at his word, as an officer of the court, that Alliance's initial reliance on the 2006 Contract was inadvertent, and that Alliance filed its Amended Complaint in order to place before the Court the documents upon which it actually relied.[21]

In filing and signing the original Complaint, plaintiff's counsel was required to make "an inquiry reasonable under the circumstances," in order to determine, to the best of his knowledge, information, and belief, that the factual contentions in the complaint were supported by the evidence. Fed. R. Civ. P. 11(b).  If Alliance had filed the equivalent of its Amended Complaint in the first place (or even clearly within the period expressly authorized under Rule 15(a)(1)), much unnecessary work by the parties and the Court could have been avoided.

Fed. R. Civ. P. 11(c)(1) prohibits imposition of the monetary sanction of attorney fee shifting without "notice and a reasonable opportunity to respond," which may take the form of a "motion for sanctions . . . made separately from any other motion," filed by the opposing party, Fed. R. Civ. P. 11(c)(2), or a show-cause order issued by the Court on its own initiative,  Fed. R.

---

[21] One indication of plaintiff's sincerity in this respect is the fact that several of the factual allegations in the original Complaint refer to provisions that are not contained in the 2006 Contract, but are found in the 2003 Contract, such as the alleged provision for "automatic renewal" of the agreement, Complaint ¶ 5, and the demand for "monthly fees."  *Id.* ¶ 6.

Civ. P. 11(c)(3).  *See* Fed. R. Civ. P. 11(c)(5).  Neither of those preconditions has been satisfied. Moreover, I view the foregoing admonitions as a sufficient sanction for the mistake in attaching the wrong contract.  Accordingly, the defendant's request for attorneys' fees will be denied.

**Conclusion**

For the foregoing reasons, Quest's First Motion will be denied, as moot; Quest's Second Motion will be denied; Alliance will be granted leave to file its Amended Complaint, *nunc pro tunc*; and the defendant's request for legal fees is denied.  An Order implementing my rulings follows.


Date:   March 1, 2012                        _____/s/_____

                                             Ellen Lipton Hollander
                                             United States District Judge